**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BRANDON HALL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FRAUENHEIM, et al.,<br><br>　　　　Defendants. | Case No. 1:16-cv-00263-AWI-DLB PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>THIRTY-DAY DEADLINE |

　　　　Plaintiff Richard B. Hall ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on February 25, 2016. He names over fifteen Defendants.

**A.　SCREENING REQUIREMENT**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1

1    A complaint must contain "a short and plain statement of the claim showing that the pleader
2    is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
3    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
4    do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly,
5    550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to
6    'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555).  While factual
7    allegations are accepted as true, legal conclusions are not.  Id.

8    Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other
9    federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092
10   (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v.
11   Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or
12   omissions of each named defendant to a violation of his rights; there is no respondeat superior
13   liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d
14   1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009);
15   Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim
16   for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).
17   The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S.
18   at 678; Moss, 572 F.3d at 969.

19   **B.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

20   Plaintiff is currently incarcerated at Salinas Valley State Prison.  The events at issue occurred
21   while he was incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California.

22   Plaintiff alleges that on December 2, 2014, he lived in Building D1 at PVSP.  The roof had
23   been leaking for years.  Defendants Frauenheim, De la Cruz, Maxwell, Allen, Anderson and
24   Alvarado knew about the leaking roof in the past, and were told again at the Warden's First Quarter
25   Meeting.[1]

26   ///

---

27   [1] Plaintiff cites to the First Quarter Warden's Meeting Minutes, dated March 13, 2015.  The Warden acknowledged that leaky roofs are an issue, but stated that everything that could be done by the institution had been done.  The matter was
28   forwarded to Sacramento, and funding was an issue.  The Warden asked that Men's Advisory Council reps go cell to cell and find out what needs to be fixed.  The lists would be submitted to the Warden, who would then send out a "strike team" to fix what they could.  ECF No. 1, at 33.

Plaintiff fell on December 2, 2014, and was injured. Since his fall, he needs a walker and painkillers four times per day. Plaintiff alleges that he requested that the roof be fixed, but he was moved to the "worst cell" he's ever seen. He contends that nothing was done until they realized how hurt he was. Plaintiff states that they "patched" the roof, but it only slowed down some water. ECF No. 1, at 5. Other than a few quick fixes, Defendants argued "about all other facts in 602 until 26 Jan. 2016." ECF No. 1, at 6.

Plaintiff contends that Defendants, especially Warden Frauenheim and De la Cruz, always said that it costs too much, but after he fell, they patched the roof. Plaintiff believes that the conditions were known "for so long" that he feels "it is clearly deliberate indifference." ECF No. 1, at 7.

After Plaintiff's fall, he was left for weeks in his cell on a "lay-in order." ECF No. 1, at 8. He was never taken to the hospital, and did not receive an MRI or x-ray until December 31, 2014. That x-ray was only for the L-spine, and Plaintiff received nothing for his shoulder, back or neck. Plaintiff finally received pain medication days later, but he could not walk to get the medication on a number of occasions. Defendant LVN Stringer would not bring the medications to Plaintiff. Plaintiff contends that a few members of the medical staff, like Defendants Stringer and PA Fortune, like to inflict pain and suffering when they can.

Plaintiff contends that Defendant doctors Ola and Chakatoas inflicted pain by "playing ignorant and telling lies." ECF No. 1, at 8.

Plaintiff missed numerous meals while on "lay-in," or because they would not give him a wheelchair. Plaintiff believes that Defendant Fortune "has something religious against" him. ECF No. 1, at 8.

Plaintiff contends that "all the times [he] was given the run around" constituted the unnecessary infliction of pain. Plaintiff states that he requested reasonable health care and medical supplies, but Defendants McElroy, Boparai, Onyese, Chakatoas and Fortune "acted or are incompetent and deliberately indifferent." ECF No. 1, at 9. They signed off on "all kinds of unreasonable calls; not giving wheelchair if needed." ECF No. 1, at 9.[2]

---

[2] Plaintiff cites to his Health Care Requests, in which he requests a wheelchair and sets out other issues. The forms do not appear to involve any of these Defendants. ECF No. 1, at 113-114, 124, 132.

3

After a "rough-ride" to Bakersfield Neuroscience and Spine Institute, Plaintiff "asked for all recommendations, but was denied." ECF No. 1, at 9. He cites to a June 19, 2014, report from Dr. Rahimifar of the Bakersfield Neuroscience and Spine Institute. Dr. Rahimifar concluded that if dexamethasone did not resolve his left leg pain, Plaintiff would need a left L4-L5 hemilaminotomy and a left L4-L5 discectomy. ECF No. 1, at 193-194. Plaintiff alleges that the recommendations were ignored by PVSP and he was denied "real medical treatment." ECF No. 1, at 10.

Since his injury, Plaintiff has not discovered what is wrong with his shoulder, back or neck, though he did just receive an MRI of his neck. He can only walk fifty yards with a walker without terrible pain. As a result, Plaintiff is depressed and takes Prozac to get out of bed each day.

At one point, Plaintiff was "dragged backwards" in a loaned wheelchair by a correctional officer, at the request of Defendant Chakatoas, just to be mean or spiteful. ECF No. 1, at 11.

He believes that surgery could help him and keep him from falling, but he would need a new exam by a neurologist since his December 2014, fall. Now that Plaintiff is at Salinas Valley, he is receiving better treatment and should soon know about his health status.

Plaintiff alleges that he was kept from daily life because he could not walk and was not given a wheelchair. He requested a cane and wheelchair as soon as he fell, but even before that day, he had requested help numerous times. He asked to walk a short way, but was denied. He missed numerous kosher meals, and Defendant Fortune and others refused to help. Plaintiff told medical staff that his religion requires him to go to meals, but he was mocked. Defendant Stringer even made fun of his depression.

**C.   DISCUSSION**

    1.   Linkage

As explained above, section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556

U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Therefore, Plaintiff must link the named defendants to the participation in the violation at issue. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991).

Plaintiff names seventeen Defendants, though he does not include allegations against Defendants Sierra, Owolabi, Conanan, and unnamed Defendants Secretary of the California Department of Corrections and Rehabilitation ("CDCR") and the Secretary of Labor for CDCR.

Plaintiff often makes allegations as Defendants as a group, but he must link each individual Defendant to facts that form the basis of his claims.

Plaintiff also refers the Court to attached exhibits, which total over 350 pages. The Court will not review his exhibits and attempt to guess his claims. It is Plaintiff's burden to set out his claims against each Defendant, including what each Defendant did and why he believes that the acts violated his rights.[3]

To the extent that Plaintiff wishes to name Defendants in supervisory positions, he must demonstrate that Defendants "participated in or directed the violations, or knew of the violations and

---

[3] Plaintiff requests counsel numerous times throughout his complaint, stating that he cannot fully explain his claims and is too medicated. Plaintiff does not have a constitutional right to the appointment of counsel in this action. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009), and the Court will request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1) only if exceptional circumstances exist. Palmer, 560 F.3d at 970; Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Here, although Plaintiff states that he cannot set out his claims, his allegations are easily understood and he appears able to express himself clearly and fully.

5

failed to act to prevent them." Insofar as he cites a policy and/or custom, Plaintiff must demonstrate that the policy or custom was the moving force behind the violation. Moreover, Plaintiff must do more than allege conclusory, speculative allegations. He must set forth facts upon which the requisite liability may be based.

Plaintiff therefore fails to state a claim against Defendants Sierra, Owolabi, Conanan, and unnamed Defendants Secretary of the CDCR and the Secretary of Labor for CDCR.

2. Eighth Amendment- Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

a. *Roof Leak*

Plaintiff contends that Defendants Frauenheim, De la Cruz, Maxwell, Allen, Anderson and Alvarado knew about the leaking roof, but failed to remedy the issue, ultimately leading to his slip and fall on December 2, 2014. However, this is nothing more than ordinary negligence, especially given Plaintiff's citation to evidence showing that prison officials believed that they had done

6

everything they could at the institutional level to remedy the issue. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); Farmer, 511 U.S. at 835, 114 S.Ct. at 1978 (deliberate indifference entails more than mere negligence).

Moreover, the Ninth Circuit has declared that "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993) (internal quotation marks and citation omitted). In general, federal courts have rejected constitutional claims brought by inmates injured as a result of a "slip and fall" caused by a hazardous condition. See, e.g., Daniels v. Williams, 474 U.S. 327, 331-333 (1986) (rejecting due process claim by pretrial detainee who slipped and fell when a pillow was negligently left on the stairs by a deputy); Wallace v. Haythorne, 2007 WL 3010755, *4 (E.D.Cal. 2007) (no triable issue as to deliberate indifference when an inmate fell after tripping on a hole in a kitchen floor; holes caused by missing tiles did not constitute an excessive risk); Townsel v. Quinn, 2008 WL 650284, *3-5 (W.D.Wash. 2008) (inmate who slipped while exiting shower and injured his hand on sharp metal plates on the floor attributed his injuries to unsafe conditions in the shower; claims dismissed for lack of facts showing that defendants knew and disregarded risks); Mende v. Renner, 1994 WL 139289, *1 (N.D.Cal. 1994) (plaintiff who slipped and fell in shower room due to wet floor caused by dripping shower did not have a Section 1983 claim).

Therefore, Plaintiff's allegations do not present the type of sufficiently serious deprivation required under the Eighth Amendment, and he fails to state a claim.

    b. *Missed Meals*

Plaintiff contends that he was "kept from daily life (yard, meals and religious services)" because he could not walk and was not given a wheelchair. ECF No. 1, at 13. This may ultimately state a claim, but Plaintiff has not linked a Defendant to the alleged denial, and he has not provided sufficient fact to explain the deprivations. Without additional facts, the Court cannot determine whether the deprivations relating to yard time and meals were sufficiently serious so as to rise to the level of an Eighth Amendment violation. It is unlikely that missing religious services would constitute a sufficiently serious deprivation, however.

Plaintiff therefore fails to state a claim for these reasons.

 2. <u>Eighth Amendment- Medical</u>

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

Plaintiff makes general denial of medical treatment claims, but he fails to link any named Defendant to the denials. For example, he states that he was left in his cell for weeks, and he did not receive adequate medical treatment, though he does not state which Defendant is responsible for the incidents.

As to Defendant Stringer, Plaintiff contends that she would not bring medication into his cell when he could not walk to get it, likes to inflict pain when she can, and made fun of his depression. While his allegations may ultimately state a claim, he has not set forth sufficient facts to show that Defendant Stringer "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." <u>Farmer</u>, 511 U.S. at 837. Plaintiff cites to various exhibits, but the Court cannot guess his claims. The liberal standards that apply to civil rights complaints may not supply essential elements of the claim that were not pled. <u>Chapman v. Pier One Imports (U.S.), Inc.</u>, 631 F.3d 939, 955 (9th Cir.2011).

Plaintiff next alleges that (1) Defendant Fortune likes to inflict pain; (2) Defendants Ola and Chakatoas "inflicted pain by playing ignorant and telling lies," ECF No. 1, at 8; and (3) Defendants McElroy, Boparai, Onyese, Chakatoas and Fortune "acted or are incompetent and deliberately indifferent" because they "signed off on all kinds of unreasonable calls; not giving a wheelchair if needed" and denied treatment. ECF No. 1, at 9. Again, however, the Court will not accept legal conclusions without factual explanation. To the extent that he alleges that he was denied a wheelchair and/or medical treatment, he must present facts to demonstrate that the responsible Defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer, 511 U.S. at 8. Even though Plaintiff offers citations to numerous exhibits, the Court will not guess as to his exact claims.

Finally, Plaintiff alleges that he was "dragged backwards in a wheelchair" by a correctional officer, at the request of Defendant Chakatoas. ECF No. 1, at 11-12. He states that because he is 6'2" tall and has back pain, "this was done just to be mean or spiteful." Plaintiff offers only his characterization of the incident to support his contention that Defendant Chakatoas was deliberately indifferent, but this is insufficient. Plaintiff has not set forth facts demonstrating that Defendant Chakatoas "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer, 511 U.S. at 8.

### 3. First Amendment

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)).

///

Plaintiff first alleges that Defendant Fortune "always had something smart to say about religion," ECF No. 1, at 8, though this does not suggest that his religion was substantially burdened in any way.

Plaintiff next contends that he missed numerous kosher meals, which are a call to worship, and that his religion requires that he go to meals. This may ultimately state a claim, but Plaintiff has not linked a Defendant to the alleged denial, nor has he provided sufficient facts to demonstrate that missing meals substantially burdened the exercise of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.

Plaintiff therefore fails to state a claim under the First Amendment.

### 4. Fourteenth Amendment

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part on other grounds by Shakur, 514 F.3d at 884-85.

Plaintiff does not present any facts to suggest that any Defendant intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. He therefore fails to state a claim under the Fourteenth Amendment.

///

///

5. <u>Federal Tort Claims Act ("FTCA")</u>

Plaintiff is advised that the United States is the only proper Defendant in an action under the FTCA. <u>Lance v. United States</u>, 70 F.3d 1093, 1095 (9th Cir. 1995) (citing <u>Woods v. United States</u>, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983)).

Plaintiff has not named the United States as a Defendant, and there are no allegations to suggest that such liability would be warranted. The United States is not liable under the FTCA for constitutional tort claims. <u>FDIC v. Meyer</u>, 510 U.S. 471, 478 (1994); <u>Cato v. United States</u>, 70 F.3d 1103, 1111 (9th Cir. 1995). The FTCA authorizes tort actions against the United States only if the United States, as a private person, would be liable to the plaintiff under California tort law. <u>United States v. Olson</u>, 546 U.S. 43, 44, 126 S.Ct. 510, 511, 114 S.Ct. 996, 1001-02 (2005); <u>Delta Savings Bank v. United States</u>, 265 F.3d 1017, 1025 (9th Cir. 2001).

Plaintiff therefore fails to state a claim under the FTCA

6. <u>Negligence</u>

　　a. *General Negligence*

Plaintiff's negligence claim is based on Defendants' failure to fix the roof leaks, which led to his slip and fall. His facts may be sufficient to state a negligence claim, but the Court will not exercise supplemental jurisdiction over the claim unless and until he states a cognizable federal claim. The "plain language" of 28 U.S.C. § 1367(a) "makes clear that supplemental jurisdiction may only be invoked when the district court has the hook of original jurisdiction on which to hang it." <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001).

　　b. *Medical Malpractice*

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." <u>Avivi v. Centro Medico Urgente Medical Center</u>, 159 Cal.App.4th 463, 468, n.2 (2008) (internal quotations and citation omitted).

///

As explained previously, Plaintiff's medical claims are mostly generalized claims about the denial of treatment and/or legal conclusions. Plaintiff may be able to state a claim for medical malpractice, but he must link each Defendant to specific acts to support a claim.

Plaintiff may amend this claim, but he is notified that if he fails to allege a viable federal claim in his amended complaint, the Court will not exercise supplemental jurisdiction over his state law claim, even if he cures the deficiencies and states a claim. 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare of Az., Inc., 715 F.3d 1146, 1156 (9th Cir. 2013)

## D.   CONCLUSION AND ORDER

Plaintiff does not state any cognizable claims. Plaintiff has not previously been provided with notice of the deficiencies in his claims and the Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the mere theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is DISMISSED WITH LEAVE TO AMEND;
2. The Clerk's Office shall send Plaintiff a complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order;

4. <u>If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated: **May 17, 2016**              **/s/ Sandra M. Snyder**
                              UNITED STATES MAGISTRATE JUDGE